# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONICA HAROLD, | : |
| Plaintiff, | : |
| v. | : |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | : CIVIL ACTION No. 18-03994 |
| Defendant. | : |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                        **November 13, 2019**
**U.S. MAGISTRATE JUDGE**

      Monica Harold was denied Social Security benefits by the decisions of an Administrative Law Judge ("ALJ") and the Appeals Council. Ms. Harold contends that these unfavorable decisions were reached in error. Pl. Br. at 2-9 (Doc. No. 15).[2] Before delving into Ms. Harold's argument about whether she is disabled, I must first address her claim that the presiding ALJ's appointment was improper under the Appointments Clause of the Constitution. *Id.* at 3-6 (citing to *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). The Commissioner of Social Security ("the Commissioner") argues that Ms. Harold forfeited this claim by not challenging the ALJ's appointment in the agency proceeding below.[3] Def. Br. at 4-12 (Doc. No. 16).

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 4, 2019 and is therefore substituted for Nancy A. Berryhill as the defendant in this action. *See* Fed.R.Civ.P. 25(d)(1); 42 U.S.C. § 205(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Page numbers referenced herein are those placed on electronically filed documents at the top of each page by the Clerk of Court.

[3] In his response, the Commissioner argued that Ms. Harold forfeited her claim because "at no point in the administrative process—whether in her initial application for benefits, on reconsideration, in her hearing before the ALJ, or before the Appeals Council—did Plaintiff ever present the argument that SSA's

After careful review, I find that the ALJ was improperly appointed under the Constitution, and that Ms. Harold did not forfeit her Appointments Clause claim because it would have been futile for her to raise it before the agency. Therefore, Ms. Harold's request for review is granted, and this matter is remanded to the Commissioner for further proceedings in accordance with the opinion that follows.

Because I am remanding the case based on the *Lucia* claim, it may be unnecessary for me to address Ms. Harold's other claim, that the ALJ erred by granting less weight to a treating physician on the basis of improper reasoning. Nevertheless, to expedite the processing of this case in the event of appeal, I find that the ALJ erred in his review of the treating physician's report. I therefore order that the matter be remanded for further review by a Constitutionally appointed ALJ, consistent with this opinion.

## PROCEDURAL HISTORY

Ms. Harold filed a claim for disability insurance benefits on January 16, 2015. Administrative Record ("R.") 196. She alleged an onset date of July 8, 2014. *Id.* Ms. Harold alleges both physical and mental severe impairments. R. 44. Her physical impairments alleged include fibromyalgia; post-total thyroidectomy and lymph node dissection and right thyroid lobectomy, due to metastatic papillary carcinoma; lateral epicondylitis and tendinosis; lumbar degenerative disc disease with disc protrusion at

---

ALJs are inferior officers under the Appointments Clause." ECF Doc. No. 16, p. 4. As I noted in my Report and Recommendation in *Ready v. Berryhill*, No. 18-4289 (E.D. Pa. April 30, 2019), a claimant would never be required to raise a constitutional objection to an ALJ's appointment status *before* the claim reached the hearing stage (i.e., in the initial application). ALJs (improperly appointed or otherwise) are not involved in the consideration of initial disability applications, and therefore any objection to a possible future ALJ's appointment would simply be speculative. Additionally, Ms. Harold did raise her claim in a letter to the Appeals Council dated August 10, 2018 (the Notice of Appeals Council Action is dated the day before, August 9, 2018). Neither party discusses this notification in their briefs.

L5 through S1; left knee degenerative disc disease; bilateral trigger finger problems with both the thumbs and middle fingers. Her mental impairments include post-traumatic stress disorder ("PTSD"); generalized anxiety disorder; and major depressive disorder. R. 44-45.

Ms. Harold's claim initially was denied on March 9, 2015. R. 158. Ms. Harold subsequently requested an administrative hearing. R. 165-66. At the hearing, held on July 14, 2017, Ms. Harold and Bruce Martin, a vocational expert, testified. R. 42-74. On August 8, 2017, the ALJ issued an opinion, finding Ms. Harold did not have a disability. R. 26-35.[4]

Ms. Harold requested that the Appeals Council review the ALJ's decision. R. 187. The Appeals Council denied her request by order dated August 9, 2018, making the Commissioner's decision to deny benefits final on that date. R. 3-9. This appeal followed.[5]

---

[4] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v).

[5] In an Order dated December 18, 2018, Ms. Harold was deemed to have consented to my jurisdiction, pursuant to 28 U.S.C. § 636(c). Doc. No. 12; *see also Roell v. Withrow*, 538 U.S. 580 (2003); Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).

# DISCUSSION

## A. This case must be decided *de novo* by a properly appointed ALJ.

The reasons for my conclusion are set forth at some length in my report and recommendation in *Perez v. Berryhill*, No. 18-1907 (E.D. Pa. Jan. 7, 2019),[6] my memorandum opinion in *Ready v. Berryhill*, No. 18-4289 (E.D. Pa. April 30, 2019),[7] and in other opinions.[8] I find that the ALJ that presided over Ms. Harold's claim was not properly appointed under the Appointments Clause and that Ms. Harold was not required to raise the issue before the agency. Furthermore, even if plaintiffs are, as a general matter, required to exhaust issues before the agency, it would have been futile for her to raise the Appointments Clause challenge at the agency level, thus excusing her from not raising the claim earlier.

---

[6] On April 23, 2019, the Honorable Timothy J. Savage entered an order, approving and adopting the report and recommendation in *Perez v. Berryhill*.

[7] The opinion was appealed by the Commissioner of Social Security on June 28, 2019.

[8] *See, e.g.,* the Honorable Timothy R. Rice's report and recommendation in *Muhammad v. Berryhill*, No. 18-172 (E.D. Pa. Nov. 2, 2018) (rejected by the Honorable Gerald J. Pappert in *Muhammad v. Berryhill*, 381 F.Supp.3d 462, 469 (E.D.Pa. 2019)); the Honorable Mark A. Kearney's opinion in *Culclasure v. Commissioner of the Social Security Administration*, No. 18-1543, 2019 WL 1641192 (E.D. Pa. Apr. 16, 2019) (appealed by the Commissioner on June 13, 2019); the Honorable Chad F. Kenney's opinion in *Risser v. Berryhill*, No. 18-4758 (E.D. Pa. August 6, 2019) (the decision was not appealed); the Honorable Linda K. Caracappa's memorandum opinion in *Powell v. Saul*, No. 18-4881 (E.D. Pa. July 30, 2019) (appealed by the Commissioner on September 27, 2019, along with *Wojciechowski v. Saul*, No. 18-3843 (E.D. Pa. July 30, 2019); the Honorable David R. Strawbridge's memorandum opinion in *Brunson v. Saul*, No. 18-5562 (E.D. Pa. July 26, 2019) (appealed by the Commissioner on September 26, 2019); the Honorable Marilyn Heffley's report and recommendation in *Pisacano v. Commissioner of SSA*, No. 18-3182 (June 27, 2019) (Magistrate Judge Heffley granted the Commissioner's unopposed motion for stay pending the decision in *Bizarre*); the Honorable Timothy R. Rice's memorandum opinions in *McWilliams v. Berryhill*, No. 18-5180, 2019 WL 2615750 (E.D. Pa. June 26, 2019) (appealed by the Commissioner on August 26, 2019) and *Kellett v. Berryhill*, No. 18-4757, 2019 WL 2339968 (E.D. Pa. June 3, 2019) (appealed by the Commissioner on August 9, 2019); the Honorable Carol Sandra Moore Wells' memorandum opinion in *Rodriguez v. Berryhill*, No. 18-4470 (E.D. Pa. May 2, 2019) (appealed by the Commissioner on June 28, 2019); the Honorable Christopher C. Connor's opinions in *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. March 4, 2019) and *Cirko v. Berryhill*, No. 17-680, 2019 WL 1014195 (M.D. Pa. March 4, 2019) (*Bizzare* and *Cirko* are currently on appeal to the Third Circuit); and the Honorable Frank H. McCarthy's opinion and order in *Willie Earl C. v. Saul*, No. 18-272 (N.D. Ok. June 26, 2019) (appealed by the Commissioner to the Tenth Circuit on August 26, 2019).

I find that the analysis in *Perez, Ready*, and the other opinions mentioned above applies in this case, even though the Appeals Council decision in this instance was issued *after* the Commissioner had ratified the appointment of the Social Security Administration ("SSA") ALJs. The Commissioner ratified the appointment of the SSA ALJs on July 16, 2018. EM-18003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—Update (effective August 6, 2018). The Appeals Council decision, in this case, was dated August 1, 2018. R. 4–7. This means that there were ALJs available, prior to the Appeals Council's decision, who may have been properly appointed, and therefore provided a possible avenue for relief had the issue been raised to the Appeals Council.

However, the SSA's policy at the time of the Appeals Council decision did not permit a constitutional remedy: "As challenges to the constitutionality of the appointment of SSA's ALJs are outside the purview of the administrative adjudication, the [Appeals Council] will **not** acknowledge, make findings related to, or otherwise discuss the Appointments Clause issue." *See* EM-18003 REV, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—Update (effective date June 25, 2018) (emphasis in original) (this Emergency Message was revised on August 6, 2018, after the issuance of the Appeals Council decision in this case). Therefore, had Ms. Harold made an Appointments Clause objection to the Appeals Council, it still would have been futile because the SSA would not have taken any action to remedy the constitutional defect. *See, e.g. Arthrex, Inc. v. Smith & Nephew*, 2019 WL 5616010, *11, ___ F.3d ___, ___ (Fed. Cir. 2019), (constitutional challenge to the appointment of the PTAB judges was

futile at the Board level and therefore Arthrex did not forfeit the claim by failing to make that argument to the Board which had no authority to provide any meaningful relief).

Since I issued my last memorandum opinion on this issue in *Ready*, on April 30, 2019, the thoughtful decision in *Muhammad v. Berryhill*, 381 F.Supp.3d 462 (E.D.Pa. 2019) has been published, in which the court affirmed the Commissioner, finding that the plaintiff had waived his Appointments Clause claim by failing to raise it before the ALJ. Because the decision in *Muhammad* considered in detail many of the reasons that have motivated courts to reject the Commissioner's arguments on the Appointments Clause issue, *see* footnote 8, *supra*, it makes sense to explain my difference of opinion with the reasoning in *Muhammad*.

At the heart of the difference in view is my assessment of *Sims v. Apfel*, 530 U.S. 103 (2000), in which the Supreme Court addressed a controversy that had simmered in the lower courts: whether "issue exhaustion," in addition to "remedy exhaustion," was required under the Social Security Act. 530 U.S. at 107. The Court concluded that the social security disability system was intended to be "non-adversarial," or "inquisitorial," and that since the Act itself did not impose "issue exhaustion," it was inappropriate for the Court to impose a judge made issue exhaustion requirement. *Id.* at 112.

The opinion in *Muhammad* distinguishes *Sims* because the Supreme Court said in *Sims* that it was not dealing with a failure to raise an issue to a Social Security Administrative Law Judge ("ALJ,") but to the Appeals Council. 381 F.Supp.3d at 466. The opinion reasons that the distinction must have been meaningful to the Supreme Court, or they would not have gone to the trouble of raising it. *Id.* at 467. The opinion in *Muhammad* then distinguishes between failing to raise an issue to the Appeals Council and failing to raise an issue to the ALJ: while the Appeals Court's review is "plenary," the

ALJ generally will consider only issues "'brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor.'" *Id.* at 468 (quoting 42 C.F.R. § 404.946(a)).

But if an ALJ only considers issues "not decided entirely in [the claimant's] favor" at the "initial, reconsidered or revised determination" stages, that means that the administrative process does not permit an ALJ to consider or decide an Appointments Clause issue at all, because it would not be possible for the state agency that makes the initial determination of non-disability to consider or decide an Appointments Clause challenge to a yet to be assigned ALJ. As a consequence, I find that there is *more* justification for the failure to raise an Appointments Clause claim with the ALJ than with the Appeals Council, since the Appeals Council has "plenary" jurisdiction, while the ALJ is required to consider issues "not decided in the [claimant's] favor." Since *Sims* did not require issue exhaustion with the Appeals Council, whose review is plenary, *a fortiori* the Court would not require issue exhaustion with the ALJ, whose review is limited.

It remains the case, with respect to both the Appeals Council and the ALJ, that neither the Social Security Act nor the agency's regulations impose an issue exhaustion requirement. *Sims* made this clear in 2000. The Commissioner now asks the lower courts to impose a judicially created issue exhaustion requirement, even though the Supreme Court has already said in *Sims* that such a requirement was inappropriate in the absence of a statutory or agency choice to embrace issue exhaustion. What is more, neither Congress nor the Agency, in the 19 years since *Sims,* have acted to impose such a requirement.

This is not a happy historical context for the Commissioner's position. If neither the agency nor Congress have seen fit to impose an issue exhaustion requirement, after *Sims*, it seems almost forlorn for the Commissioner to ask the lower courts to impose one. The same reasons that counseled the Supreme Court, Congress and the Social Security Administration to abstain from imposing issue exhaustion – the non-adversarial nature of the Social Security process – should counsel lower courts to follow the same path.

The court in *Muhammad* also drew support from a distinction between adversarial and non-adversarial (or "inquisitorial") processes that was based on language in *Sims*. 381 F.Supp.3d at 467. The *Muhammad* opinion develops the argument that ordinary factual issues are treated in a non-adversarial way by the Social Security Administration's ("SSA") scheme, with the ALJ responsible for investigation as well as decision, but that the Appointments Clause challenge, a stark legal challenge to the legitimacy of the ALJ, is "as adversarial as it gets." *Id.* Since the Appointments Clause challenge is "adversarial" in nature, the argument goes, the rationale for exhaustion is stronger, under *Sims. Id.*

This is not the sense in which the term "adversarial" is used in *Sims*. There, "adversarial" is used as a shorthand description of a system that assigns primary responsibility for investigating and raising issues, be they factual or legal, to the adversaries – the litigants - not the judge. *Sims*, 530 U.S. at 111. "Inquisitorial" is a descriptor for a system in which the judge, not the litigants, bears the primary responsibility for case development. *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1301-05, 1325-29 (1997) (cited in *Sims, id.*).

8

An adversarial system logically supports doctrines of forfeiture and exhaustion because the responsibility for developing the record and advancing legal arguments is placed on the parties, on pain of forfeiture if they fail in their duties. The opinion in *Muhammad* posits that advancing an Appointment Clause argument pits the plaintiff against the ALJ in a way that fact issues do not, and is "adversarial," in that sense. Yet the nature of the issue, whether Constitutional or an ordinary fact issue, does not determine whether a system is "adversarial" or not, as that term is used in *Sims*. "Adversarial," as the term is used in *Sims*, is a descriptor of a system, not of a particular issue. And the logic of an adversarial system's exhaustion and forfeiture rules applies equally to both fact development and legal arguments. *See e.g.* Fed. R. Civ. Pro. 51(b) and Fed. R. Evid. 103(b). That is why a court of appeals will not consider a legal argument not raised below except in special circumstances, such as plain error. *See* Fed. R. Civ. Pro. 52(b).

There is no indication that the Social Security disability process is half adversarial (as to legal issues) and half inquisitorial (as to factual issues). *Sims,* 530 U.S. at 111-12. The system puts the ultimate burden on the ALJ to develop the evidence and assess the law, primarily because many if not most claimants are not represented. *Id.* If anything, there is *less* reason under the SSA scheme to forfeit a complex Constitutional issue than an omitted evidentiary argument, because a claimant is more likely to know about the facts supporting her disability than she is to know about the details of an ALJ's appointment, and whether the appointment complied with the Constitution.

An unfortunate consequence of the distinction made in *Muhammad* is that if a litigant fails to raise an ordinary evidentiary argument dealt with every day by the disability determination apparatus, she can be forgiven for failure to exhaust, under

*Sims*, even though the agency could have addressed the evidentiary argument efficiently if it had been timely raised. But if the litigant fails to raise a Constitutional issue that the ALJ had no power to cure and was instructed not to address by the Commissioner, there can be no forgiveness for failure to exhaust. This is not an efficient or equitable allocation of resources.

As a matter of appropriate resource allocation, the Social Security Administration has the opportunity, the legal expertise, the motive, the wherewithal, and the Constitutional authority to get its own appointments right. Congress set up the SSA to be non-adversarial, *i.e.*, *exactly not* to reflexively throw onto the plaintiff's shoulders the burden of raising all legal arguments, on pain of forfeiture. But because the SSA did not get its appointments right in the first place, it now asks for a court imposed, after-the-fact issue exhaustion rule to cure the administrative burden occasioned by its Appointments Clause error. It seems more appropriate to impose the burden of the error on the agency, who was in the best position to avoid the mistake in the first place, and is in the best position to remedy the mistake now that it has been acknowledged.

Turning from the question whether issue exhaustion is required, to the question of whether an issue exhaustion requirement, if one exists, should be waived, the *Muhammad* opinion mentions that the Supreme Court conceived of its dispensation of the exhaustion requirement in *Freytag* to be a "rare case." *Muhammad v. Berryhill*, 381 F.Supp.3d 462, 469 (E.D.Pa. 2019) (quoting *Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991). The short answer is that *Freytag* dealt with an exception to the ordinary rule of issue forfeiture in the context of an obviously adversarial system: the Tax Court. *Id.* at 878–79. Forgiveness of an issue exhaustion rule should be a "rare case" in the context of an adversarial system, but not in an inquisitorial system. The circumstances in *Freytag*

supply many reasons for forgiveness of an exhaustion requirement (if one exists) in this case, as Judge Connor pointed out in the *Bizarre* opinion: the ALJs have no authority to resolve an Appointments Clause challenge, claimants are not required to raise constitutional challenges to the Appeals Council, and the Social Security Administration has no statute or procedure that warns claimants that the failure to raise the constitutional claim at the agency may risk forfeiture. *Bizarre v. Berryhill*, 364 F.Supp.3d 418, 421 (M.D. Pa. 2019).

Having considered the thoughtful objections posed by the *Muhammad* opinion, I must respectfully disagree. While I am sensitive to the administrative burden imposed on the agency by the reversal of many decisions based on the defective appointment of ALJs, the way to cure the administrative problem is not through the device of imposing an issue exhaustion requirement on plaintiffs after-the-fact, which seems procedurally unfair. Such a requirement also flies in the face of the reasoning in *Sims*, as well as the reality that there is *absolutely nothing* the ALJ or Appeals Council could or would have done differently, had the issue been raised by the plaintiff in the administrative process.

For these reasons I find that the matter should be remanded for a new hearing before an ALJ appointed in accordance with the Constitution.

### B. The ALJ erred by discounting the treating physician's report on the basis of an improper reason.

Because I have concluded that remand is appropriate in order to have a different, properly appointed ALJ review the Plaintiff's claim, it may be unnecessary for me to examine the Plaintiff's claim that the ALJ erred by discounting the treating physician's report. Nevertheless, in the hope that rendering an opinion on this issue now may save the parties some time as the Appointments Clause issue makes its way through the

appeal process, I will rule on the Plaintiff's claim that the ALJ failed to properly evaluate the extensive medical evidence, and a number of opinions contained in these records, in denying her claim.

Ms. Harold argues that the ALJ failed to give the opinion of treating physician, Dr. Steven J. Valentino, D. O., appropriate weight, for an improper reason. Pl. Br. at 9. I agree. At R. 33, the ALJ notes that on February 3, 2015, Dr. Valentino provided a functional assessment questionnaire in which he opined that Ms. Harold "was limited to occasionally lifting less than 10 pounds, sitting two to four hours of an eight-hour workday, and standing and walking two hours. She would require unscheduled breaks and miss three days or more of work per month." *Id.* The ALJ gave the opinion "little weight" stating that Dr. Valentino "is not a physician and the opinions are inconsistent with treatment records and the objective medical evidence." *Id.*

Osteopathic doctors are acceptable medical sources according to the Social Security regulations. 20 C.F.R. §404.1502(a)(1). The Commissioner concedes the point, but argues that the error is harmless:

> Although the ALJ mistakenly noted that Dr. Valentino was not a physician, the ALJ acknowledged him as a D.O., and the ALJ was correct in concluding that Dr. Valentino's opinion was inconsistent with treatment records and the objective medical evidence (R. 33), and thus any error in misclassifying Dr. Valentino did not affect the outcome of this case.

Comm. Resp. at 14.

I disagree that the ALJ's mischaracterization of Dr. Valentino as a "non-physician," resulting in the ALJ's complete discounting of his opinion, had no effect on the outcome of this case. The plaintiff's medical records consist of more than 1400 pages, documenting Ms. Harold's treatment for a wide range of problems, including cancer, several surgeries, hospital stays and office treatment by orthopedists and

neurologists.[9] If any single doctor is in a position to assess Ms. Harold's overall ability to function given the myriad of health issues she faces, it is her primary care physician. Yet the ALJ spent just six lines discussing Dr. Valentino's conclusions, in a seven-page discussion of the plaintiff's physical and mental impairments. Given the massive quantity of records here, my review of the opinion, which fails to even mention a number of the treating doctors, leads me to the conclusion that the ALJ likely relied on the erroneous conclusion that Dr. Valentino was not an acceptable medical source as a shorthand way of dismissing the doctor's opinion, rather than carefully setting forth the evidence in the record that contradicts the opinion, and explaining why the contradictory evidence was discounted. This was error. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (Treating physician's reports should be accorded great weight but may be afforded more or less weight depending upon the extent to which supporting explanations are provided (citations omitted)). The record does not so clearly favor a finding of non-disability that I can conclude that the error was harmless.

---

[9] These are for the treatment of her physical ailments. In addition, Ms. Harold has records that purport to document her mental impairments as well. She has not raised an argument concerning the ALJ's discounting of her various mental impairments, so I offer no opinion concerning the ALJ's handling of those records.

## **CONCLUSION**

Based upon the above, Plaintiff Monica Harold's Request for Review is granted. I find that Ms. Harold did not forfeit her objection to the ALJ's appointment. Therefore, because the ALJ was improperly appointed, the Commissioner's final decision is reversed and this matter is remanded for further proceedings before a different, constitutionally appointed ALJ.

**BY THE COURT:**


_s/Richard A. Lloret_
**RICHARD A. LLORET**
**U.S. Magistrate Judge**